**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEMETRIC MCGOWAN,

      Petitioner,

v.

JOHN CHRISTIANSEN,

      Respondent,

_____/

Civil No. 2:09-CV-14539
HONORABLE ARTHUR J. TARNOW
UNITED STATES DISTRICT JUDGE

## <u>OPINION AND ORDER ON REMAND GRANTING HABEAS CORPUS RELIEF ON THE BASIS OF *BRADY* VIOLATION AND DENYING THE PETITION FOR WRIT OF HABEAS CORPUS RELIEF ON OTHER GROUNDS</u>

This matter is on remand from the United States Court of Appeals for the Sixth Circuit. Petitioner, through counsel Colleen P. Fitzharris of the Federal Defender Office, seeks habeas relief pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for possession with intent to distribute 50-450 grams of cocaine, felony firearm, felon in possession of a firearm, carrying a concealed weapon, and being a third felony habitual offender. Petitioner was denied his Fourteenth Amendment right to due process by the suppression of exculpatory evidence, the Court GRANTS the petition for writ of habeas corpus. The Court denies petitioner's remaining claims.

## I. Background

Petitioner was convicted following a jury trial in the Monroe County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Police received an anonymous tip of drug use at an apartment, received consent from the resident to conduct a search, and discovered drugs in the apartment.  The apartment occupant was on parole and agreed to arrange a purchase for three and one-half ounces of cocaine from her supplier, defendant.  Defendant called the occupant turned informant when he was on his way with the drugs.  When he arrived, defendant was arrested carrying three and one-half ounces of cocaine and a gun.  Conversely, defendant claimed that he merely carried three and one-half grams of cocaine.  Defendant asserted that he did not intend to deliver the cocaine, but rather, it was for his own personal use.   He further testified that he came to visit the informant for commercial sex.

*People v. McGowan,* No. 275781, 2008 WL 723945, * 1 (Mich.Ct.App. March 18, 2008).

Petitioner's conviction was affirmed on appeal.  *Id., lv. den.* 482 Mich. 1030; 769 N.W.2d 202 (2008).

Petitioner filed his original petition for writ of habeas corpus in 2009.  After being permitted to amend the petition, the case was held in abeyance to permit petitioner to return to the state courts to exhaust additional claims.

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. McGowan,* No. 06-35201-FH (Monroe

County Circuit Court, January 20, 2012). The Michigan appellate courts denied petitioner leave to appeal. *People v. McGowan*, No. 308520 (Mich.Ct.App. August 24, 2012); *lv. den.* 493 Mich. 967; 829 N.W.2d 223 (2013).

On August 27, 2013, petitioner, through his new counsel, S. Allen Early, filed an amended petition for writ of habeas corpus.

This Court granted the petition for writ of habeas corpus, finding that petitioner was denied the effective assistance of trial counsel when his attorney gave him, before trial, inaccurate advice that the sentencing guidelines range after trial would be 45–93 months (3 3/4 years–8 3/4 years) when in fact it was 78–195 month (6 1/2 years–16 1/4 years), which caused petitioner to reject the prosecutor's plea bargain offer and receive a much greater sentence after being convicted at trial, namely, 195 months (16 years, 3 months) to forty years in prison. *McGowan v. Burt*, No. 43 F. Suppp. 2d 761 (E.D. Mich. 2014).

The Sixth Circuit reversed the Court's decision. The Sixth Circuit also remanded the matter to this Court for consideration of petitioner's remaining claims. *McGowan v. Burt,* 788 F.3d 510 (6th Cir. 2015); *cert den.* 136 S. Ct. 415 (2015).

The Court reopened the case to the Court's active docket. The Court granted Mr. Early's request to withdraw as counsel and appointed the Federal Defender Office to represent petitioner. The parties filed supplemental briefs.

The Court subsequently granted petitioner's motion to hold the petition in

abeyance so that he could properly exhaust his third claim.

Petitioner filed a second motion for relief from judgment in the trial court.

The judge denied the motion after conducting oral arguments on the motion. (Tr.

6/30/17, pp. 16-20, ECF 64-5, Pg ID 1829-33).

The Court subsequently granted petitioner's motion to reopen the petition.

Petitioner seeks habeas relief on the following grounds:

I.  Mr. McGowan was deprived of his Sixth Amendment right to
present a complete defense.

II.   The state court's decision to reject Mr. McGowan's claim of
ineffective assistance of counsel at trial was based on an unreasonable
application of clearly established federal law.

III.  Mr. McGowan was deprived of his right to due process because the
prosecution violated *Brady/Giglio* by withholding information bearing on
the credibility of its star police witness, who was later charged and
convicted with racketeering for stealing and reselling seized evidence.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty
Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or
involved   an   unreasonable   application   of,   clearly

> established Federal law, as determined by the Supreme
> Court of the United States; or
> (2)    resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III.  Discussion

### A.  Claim # 3.  The *Brady/Giglio* claim.

Petitioner claims that the prosecutor or the police violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 153 (1972) by withholding or failing to disclose that the officer in charge of the case, Lieutenant Luke Davis, systematically embezzled money and property seized from drug suspects between March of 2006 and December of 2008. This time

period includes the period of petitioner's arrest and conviction. Lieutenant Davis

was not charged until 2011. On May 13, 2013, Lieutenant Davis pleaded no-

contest to racketeering in the Monroe County Circuit Court. (See Petitioner's

Exhibit B, ECF 57-2, Pg ID 1595-98).

Petitioner argues that this evidence of corruption on the part of Lieutenant Davis

in the performance of his duties would have affected the credibility of the

prosecution witnesses and undermines confidence in the verdict. The Court

grants relief on this claim.

Respondent initially argues that this Court should not entertain this claim

because it is beyond the scope of the remand order from the Sixth Circuit, in

which the Sixth Circuit ordered this Court to consider petitioner's pretermitted

claims. Respondent argues that petitioner's original and first amended habeas

petition did not contain any *Brady* claim and thus cannot be considered on

remand.

"A remand directing a specific, narrow course of action is fairly considered

a limited remand." *Hargrave-Thomas v. Yukins*, 450 F. Supp. 2d 711, 721 (E.D.

Mich. 2006)(*citing United States v. O'Dell*, 320 F. 3d 674, 680–81 (6th Cir.

2003)). When a limited remand is issued by the appellate court, "[t]he mandate

rule 'compels compliance on remand with the dictates of the superior court and

forecloses relitigation of issues expressly or impliedly decided by the appellate

6

court.'" *Id.* (*quoting O'Dell,* 320 F. 3d at 679 (internal quotation omitted). "A district court is bound to the scope of the remand issued by the court of appeals." *Id.* (*quoting United States v. Campbell*, 168 F. 3d 263, 265 (6th Cir. 1999)). "The scope of a remand is determined by examining the entire order or opinion, to determine whether and how the court of appeals intended to limit a remand." *Carter v. Mitchell*, 829 F.3d 455, 463 (6th Cir. 2016)(*quoting Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004)).

Although petitioner did not raise a *Brady* claim in his original *pro se* petition, petitioner's original counsel, Lawrence J. Bunting, filed an amended petition for writ of habeas corpus, raising a new claim involving newly discovered evidence that Lieutenant Davis had been charged with several criminal charges alleging corruption on his part. (See ECF 12, Pg ID 965-66). This amended petition was later superseded by a second amended petition filed by S. Allen Early, who replaced Mr. Bunting as counsel. This second amended petition contained the same claim. (ECF 19, Pg ID 1016-19). Although petitioner originally raised this claim as a newly discovered evidence claim and not as a *Brady* claim, he nonetheless raised a claim pertaining to Lieutenant Davis' corruption in his first and second amended petitions. The Court declined to address this claim at the time because it granted petitioner habeas relief on his claim that counsel's inaccurate advice concerning petitioner's sentencing

guidelines caused petitioner to reject a plea bargain. The Sixth Circuit reversed the conditional grant and remanded the matter to this Court to consider petitioner's remaining claims. On remand, this Court did hold the case in abeyance so that petitioner could return to the state courts to exhaust the claim as being one under *Brady, infra.* Respondent did not object at the time to the Court allowing petitioner to return to the state courts to raise a *Brady/Giglio* claim nor has respondent cited to any caselaw that would suggest that it would be beyond the scope of the remand for this Court to adjudicate petitioner's claim involving Lieutenant Davis, even if it is now being advanced under a different theory.

Respondent alternatively alleges that petitioner's *Brady* claim amounts to a second habeas petition that requires permission from the Sixth Circuit before he can raise this claim.

An individual seeking to file a second or successive habeas petition must first ask the appropriate court of appeals for an order authorizing the district court to consider the petition. *See* 28 U.S.C. § 2244(b)(3)(A); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 641 (1998). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal district court does not have jurisdiction to entertain a successive post-conviction motion or petition for writ of habeas corpus in the absence of an order from the court of appeals authorizing

the filing of such a successive motion or petition. *See Ward v. Wolfenbarger,* 323 F. Supp. 2d 818, 825-26 (E.D. Mich. 2004).

Petitioner's *Brady* claim does not amount to a successive petition within the meaning of 28 U.S.C. § 2244(b)(3)(A). When this Court conditionally granted petitioner habeas relief on his claim that counsel was ineffective with respect to the plea negotiations, the Court declined to address petitioner's remaining claims, including any claims involving Lieutenant Davis. By entering a conditional writ, which was a final order, and not ruling on petitioner's remaining claims, this Court essentially dismissed that claim without prejudice because it was not ripe. Petitioner never received an adjudication of this claim. Petitioner's claim was not ripe and exhausted until he returned to federal court. Petitioner's *Brady* claim should be treated as a continuation of his first petition. Accordingly, petitioner not required to get authorization to file a "second or successive" application before his *Brady* claim can be heard. *See In re Salem*, 631 F.3d 809, 813 (6th Cir. 2011).

Respondent further claims that petitioner's *Brady* claim is barred by the AEDPA's statute of limitations because the claim was filed more than one year after his conviction became final. Respondent does not contend that petitioner's original claim involving the newly discovered evidence of Lieutenant Davis'

corruption was not timely filed when it was raised in Mr. Bunting's first amended petition in 2011.

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Petitioner's *Brady* claim is not barred by the one year limitations period because it shares a common core of operative facts with his earlier timely filed claim that he had newly discovered evidence of Lieutenant Davis' corruption during the time of petitioner's arrest and prosecution that could have been used to impeach Lieutenant Davis' credibility. *See Bailey v. Lafler*, No. 1:09-CV-460, 2010 WL 4286352, at * 5 (W.D. Mich. Sept. 29, 2010)(report and recommendation adopted, No. 1:09-CV-460, 2010 WL 4258772 (W.D. Mich. Oct. 22, 2010)("respondent concedes that the *Brady* claim is closely connected to petitioner's due-process claim, such that the new claim relates back to the timely filing of this habeas corpus action and is not time-barred."). This Court will proceed to address the merits of petitioner's claim.

Petitioner raised his *Brady* claim in his second motion for relief from judgment. The judge denied the claim on the record after oral arguments. In so

ruling, the judge stated: "I truly do not believe that . . . this jury would have come back with a  different conclusion. I cannot find that, I really cannot find that based on what has been submitted here." (Evid. Hr'g Tr., ECF 64-5, Pg ID  1832).

To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).  In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.   The rule in *Brady* "applies to evidence undermining witness credibility." *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016). Evidence is "material when there is any reasonable likelihood it could have affected the judgment of the jury." *Id.*  Thus, the test is not whether the jury would have acquitted had it known seen the suppressed evidence; a

Due Process violation occurs if the withheld "evidence is sufficient to undermine confidence in the verdict." *Id.* (citing *Smith v. Cain*, 565 U.S. 73 (2012)). Under this standard, petitioner can prevail on his *Brady* claim violation even if "the undisclosed information may not have affected the jury's verdict." *Id.* at 1006, n. 6.

Respondent initially argues that there was no *Brady* violation because the prosecution was unaware of Lieutenant Davis' corruption at the time of his trial. Respondent is mistaken. The fact that the Monroe County Prosecutor may have been unaware of Lieutenant Davis' illegal activities is not dispositive of whether a *Brady* violation occurred nor would it relieve other agents of the State from disclosing the evidence. *Brady's* obligation to disclose applies to exculpatory evidence that is known only to the police, but withheld from the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *See also Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009)("*Brady* . . . applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not . . . and whether the accused asked for it or not."). "[B]ecause the police are just as much an arm of the state as the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009).

Petitioner's case is very close to that of the petitioner in *Harris*, *supra,* where the Sixth Circuit granted habeas relief because the Michigan Court of Appeals, contrary to the Supreme Court's holdings, ruled that there was no *Brady* violation because the prosecutors were not aware of the explicit and implicit promises police made to the prosecution's star witness. *Harris,* 553 F.3d at 1033. The Sixth Circuit held that the state's failure to provide these statements, which could have been used to impeach the witness, violated *Brady*. *Id.* The Sixth Circuit further concluded that the petitioner in *Harris* was prejudiced by the nondisclosure, because the impeachable witness "was the key witness for the prosecution." *Id.*

Lieutenant Davis was the key witness for the prosecution. He was the officer in charge of the investigation and sat at the prosecution's table throughout the trial. (See ECF 7-5, Trial Tr., Pg ID 465). Although the prosecutor may not have known about Lieutenant Davis's corrupt activities, such knowledge can be imputed to the prosecution because Lieutenant Davis was a part of the prosecution team.

In *Arnold v. Secretary, Department of Corrections*, 595 F.3d 1324 (11th Cir. 2010), *adopting opinion of Arnold v. McNeil*, 622 F. Supp. 2d 1294 (M.D. Fla. 2009), *aff'd and adopted*, 595 F.3d 1324 (11th Cir. 2010), the United States Court of Appeals for the Eleventh Circuit held that crimes committed by a police

13

detective who was a lead investigator and key witness against a criminal defendant, although not known by the prosecutor until after the conclusion of petitioner's trial, was material exculpatory information that the prosecution was obligated to disclose to the defendant under *Brady*. The district court, in its earlier opinion, reasoned that because the corrupt officer was a part of the prosecution team, the officer's knowledge of his own misconduct could be imputed to the prosecution team as a whole. *Arnold v. McNeil*, 622 F. Supp. 2d at 1298, 1315.

This case is also similar to *United States v. McClellon*, 260 F. Supp. 3d 880, 883–88 (E.D. Mich. 2017), *appeal dismissed*, No. 17-1703, 2017 WL 4317149 (6th Cir. July 20, 2017), where Judge David M. Lawson of this district granted a new trial based on a *Giglio* violation despite the fact that the prosecutor was unaware of the police officer's misconduct. In that prosecution for being a felon in possession of a firearm, a Detroit Police officer testified that he saw the defendant toss a gun during a pursuit. *Id.* at 882. The day after this officer testified, the Detroit Police Department suspended the officer during the course of an investigation into claims that the officer falsified police reports in weapons cases. *Id.* The officer was subsequently criminally charged, but acquitted. This officer was not the only law-enforcement witness who testified to seeing the defendant with a gun. *Id.* at 883. Despite the fact that the

government was unaware of the investigation, *Id.* at 884, the court found a *Giglio* violation because the officer knew of his own suspension and the pending investigation into his misconduct and that information undermining his credibility would damage the case. *Id.* at 885.

Evidence that Lieutenant Davis had embezzled drugs, money, and property from drug suspects could have been used to impeach his credibility. Moreover, evidence that Lieutenant Davis had stolen drugs, money, and property belonging to drug suspects could have been used by the defense counsel to explain why he was unable to obtain the jacket that petitioner had been wearing on the day of the arrest, in order to establish that petitioner was tased in a manner inconsistent with him reaching for a weapon, as the police had suggested.

Evidence that Lieutenant Davis was engaged in illegal activities at the time of petitioner's arrest and trial would also have been material to the case. Lieutenant Davis was the key witness against petitioner as well as the officer in charge of the case. This case was not compelling against petitioner and the facts were in dispute. Although Lieutenant Davis claimed to have seized three and one half ounces from petitioner, some of the police paperwork in this case indicated that only 3½ grams of cocaine was seized from petitioner. (ECF 7-5, Tr. 12/11/06, pp. 115-116, 124). No scale was recovered from the informant

Corrina Pierson's apartment or from petitioner, even though Pierson claimed that petitioner was going to divide up the 3½ ounces into smaller quantities. (*Id.*, p. 110). Pierson did not actually see petitioner, the cocaine, or gun because she remained in the bathroom until officers left with petitioner. (*Id.*, p. 193). Pierson only saw a chunk of cocaine which she described as about the size of a fist on the table when she came out of the bathroom. (*Id.*, p. 220). While it is true that Officer Sharon McDonald claimed that Lieutenant Davis seized the cocaine from petitioner, (*Id,* p. 101), she herself indicated that she seized a gun from petitioner at the same time (*Id.*), suggesting that she may have been more focused on the gun than the quantity of cocaine seized from petitioner. McDonald's credibility is itself was suspect because Lieutenant Davis was her supervisor. (*Id.*, p. 96). McDonald admitted that some of the reports prepared in this case indicated that only 3 ½ grams of cocaine were taken from petitioner. Although several additional police officers were involved with the arrest, none of them actually witnessed the cocaine being seized from petitioner. (*Id.*, pp. 172-73, 224, 233). Petitioner, as mentioned in the statement of facts, denied being in possession of 3 and a half ounces of cocaine with the intent to deliver the cocaine, claiming instead that he only had 3 ½ grams for personal use.

Evidence of Lieutenant Davis's corruption, embezzlement, and racketeering would clearly be material to the outcome of this case, either as

exculpatory evidence or impeachment evidence.  At the very least, this evidence creates a "probability sufficient to undermine confidence in the outcome" of the verdict. *Bagley,* 473 U.S. at 683.  Although there may be circumstantial evidence of petitioner's guilt, "That circumstantial chain of evidence may be compelling, but it certainly is not overwhelming proof of the [petitioner's] guilt." *United States v. McClellon*, 260 F. Supp. 3d at 885.   Lieutenant Davis' "testimony is the only basis that clearly connected the dots between those circumstances to make an unassailable presentation. If that testimony is placed in serious doubt, then the case is put into a much different light." *Id.*  Petitioner should have an opportunity to present this evidence at a new trial.

Therefore, the Court will order the State of Michigan to either (1) set a new trial date that is within ninety days of entry of this order, which is to be conducted in accordance with the conditions stated in this opinion, or (2) release Petitioner unconditionally.

Because the Court is granting habeas relief on this claim, the Court briefly addresses petitioner's remaining claims.

**B. Claim # 1.  The right to present a defense claim.**

Petitioner claims that he was denied his right to present a defense when the judge refused to allow defense counsel to question the informant in this case, Ms. Pierson, about her being a prostitute.  Petitioner's counsel wanted to

17

elicit this testimony in order to establish that petitioner went to the informant's house not to sell drugs, but to engage in commercial sex with the informant. Petitioner's counsel's proposed question was part of petitioner's defense that he was not engaged in drug trafficking and was not in possession of the 3 and a half ounces of cocaine that the police claimed to have seized, but only three and a half grams of cocaine, which were for personal use.

The Michigan Court of Appeals rejected petitioner's claim on his appeal of right:

> First, defendant alleges that the trial court erred in refusing to allow him to question the informant regarding her occupation as a prostitute. On cross-examination, defense counsel inquired what the informant did for a living at the time of the charged offenses. She stated that she did not want to answer. The prosecutor objected based on relevancy grounds. A discussion was held outside the presence of the jury. In the discussion, defense counsel alleged that the police officers did not hear the conversation setting up the drug transaction, contrary to the trial testimony. He asserted that the informant set up a transaction for sex rather than drugs. Defense counsel also indicated that he wanted to question the informant regarding what she was wearing because, upon information and belief, she was dressed as a "call girl." The trial court excluded the testimony based on relevancy grounds. The trial court also held that the informant was not provided with immunity and had a right to be free from self-incrimination. The trial court further stated that defendant's purpose for visiting the informant's residence, whether to engage in sexual acts or to watch football, was irrelevant with regard to his intent or the reason for having drugs on his person. Defendant asserts that the exclusion of this line of questioning and testimony deprived him of a substantial defense and shifted the burden of proof. We disagree.

This Court reviews claims regarding the denial of the constitutional right to present a defense de novo. *People v. Kurr*, 253 Mich.App. 317, 327, 654 N.W.2d 651 (2002). No person may be deprived of life, liberty, or property without due process of law. U.S. Const, Ams V, XIV, § 1; Const 1963, art 1, § 17; *People v. Bearss*, 463 Mich. 623, 629, 625 N.W.2d 10 (2001). A defendant in a criminal case has the right to present a defense. US Const, Ams VI, XIV; Const 1963, art 1, § 13; *Kurr, supra* at 326, 654 N.W.2d 651. However, "[i]t is well settled that the right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v. Toma*, 462 Mich. 281, 294, 613 N.W.2d 694 (2000), quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

"The decision whether to admit evidence is within a trial court's discretion." *People v. Katt*, 468 Mich. 272, 278, 662 N.W.2d 12 (2003). Evidence that is relevant is admissible. *People v. Layher*, 464 Mich. 756, 761, 631 N.W.2d 281 (2001); MRE 402. To determine if evidence is relevant under MRE 401, a reviewing court must examine: (1) the materiality of the evidence, and (2) "whether the evidence makes a fact of consequence more or less probable than it would be without the evidence." *People v. Mills*, 450 Mich. 61, 66-67, 537 N.W.2d 909 (1995). A fact is material if it is within the range of litigated matters in controversy. *Id.* at 68, 537 N.W.2d 909.

Both the federal and state constitutions provide the witness with a privilege against self-incrimination. *People v. Dyer*, 425 Mich. 572, 578, 390 N.W.2d 645 (1986). The trial court may compel the witness to answer a question only when it is apparent that the testimony will not incriminate the witness. *Id.* at 578-579, 390 N.W.2d 645. A defendant does not have the power to immunize witnesses and cannot compel a grant of immunity. *People v. Lawton*, 196 Mich.App. 341, 346, 492 N.W.2d 810 (1992). Testimony is protected against compelled disclosure when there is even a possibility of incrimination. *Id.*

Irrespective of the asserted relevancy of the informant's occupation, the right of the witness to be free from self-incrimination must be

balanced against defendant's right to a substantial defense. In the present case, defendant was not deprived of any right to present a defense by the informant's failure to answer the question regarding her occupation. The elements of possession with intent to deliver between 50 and 449 grams of cocaine are: "(1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; (3) the substance possessed was cocaine and the defendant knew it was cocaine; and (4) the substance was in a mixture that weighed between 50 and [449] grams." *People v. Crawford*, 458 Mich. 376, 389, 582 N.W.2d 785 (1998). Intent to deliver need not be established with proof of actual delivery of narcotics. *People v. Wolfe*, 440 Mich. 508, 524, 489 N.W.2d 748, *amended* 441 Mich. 1201, 489 N.W.2d 748 (1992). "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v. Fetterley*, 229 Mich.App. 511, 517-518, 583 N.W.2d 199 (1998) (Citations omitted). Intent to deliver can be inferred from the quantity of narcotics in the defendant's possession, the manner in which the narcotics are packaged, and other circumstances surrounding the arrest. *Wolfe, supra.*

In the present case, a police record indicated that three and one-half grams of cocaine were recovered. That record was countered by other police documentation and testimony from police officers at trial that he was found with three and one-half ounces of cocaine. Accordingly, there was contradictory evidence in the trial record regarding the amount of drugs recovered from defendant's person. Moreover, the quantity of cocaine was not divided, and defendant was not found in possession of a scale at the time of arrest. Consequently, the defense had sufficient information to refute the intent to deliver, irrespective of the informant's alleged occupation. Therefore, defendant was not deprived of a substantial defense when the trial court ruled that the occupation was irrelevant and violated the informant's right to be free from self-incrimination. Furthermore, the burden of proof was not shifted in light of the evidence available to dispute the intent to deliver. Accordingly, this claim of error is without merit.

*People v. McGowan*, 2008 WL 723945, at * 1–3.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.*

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was

erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Petitioner argues that this Court should review his claim *de novo*, rather than under the AEDPA's standard of review. Petitioner argues that *de novo* review is appropriate because the trial court ruled that Ms. Pierson's occupation as a prostitute was irrelevant, whereas petitioner argues that the Michigan Court of Appeals affirmed the exclusion of Ms. Pierson's status as a prostitute on the mistaken reliance on a Fifth Amendment right against self-incrimination that petitioner claims Pierson never invoked.

It is true that when a state court fails to adjudicate a habeas petitioner's claim on the merits, federal habeas review is not subject to the deferential standard contained in § 2254(d) and a federal court is required to review that claim *de novo. See Cone v. Bell,* 556 U.S. 449, 472 (2009). However, the AEDPA deferential review applies "whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated." *Harrington,* 562 at 98. A federal court on habeas review of a state court conviction must review

"the state court's decision, not the court's intermediate reasoning." *Davis v. Carpenter*,  798 F.3d 468, 475 (6th Cir. 2015); *See also Holland v. Rivard,* 800 F.3d 224, 235–36 (6th Cir. 2015)(a habeas petitioner must show that there was "no reasonable basis for the state court to deny relief," even if the state court gave a "bad reason" for its decision because federal courts are to review the result that the state court reached, not whether its decision was well-reasoned); *Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012)(habeas relief is not available "unless each ground supporting the state court decision is examined and found to be unreasonable under AEDPA").

In the present case, the Michigan Court of Appeals clearly adjudicated the merits of petitioner's right to present a defense claim.  This is not a case where the appellate court ignored the substance of petitioner's claim or rejected it on procedural grounds. At most, the Michigan Court of Appeals affirmed the trial court's decision on an alternative basis.  It's not even clear that the Michigan Court of Appeals' reasons for rejecting petitioner's claim were all that different than the trial judge's rationale for excluding the evidence, as the Michigan Court of Appeals acknowledged in its decision that the trial judge excluded the evidence on relevancy grounds.

A federal habeas court will not disturb a state court's exclusion of evidence on the ground of relevancy "unless the relevance and probative value of such evidence is so apparent and great that excluding the evidence denies the petitioner the due process of law." *Jones v. Smith,* 244 F. Supp. 2d 801, 814 (E.D. Mich. 2003)(internal citations omitted). "The inquiry in reviewing a claim of improper exclusion of evidence is whether the evidence was rationally connected to the crime charged and, if its exclusion was so prejudicial as to deprive the defendant of a fundamentally fair trial." *Id.*

This Court cannot conclude that the trial judge's refusal to order Ms. Pierson to answer whether she was a prostitute deprived petitioner of a fair trial. Petitioner was permitted to testify that he went to Ms. Pierson's house in order to have sex with her because she was a prostitute. Petitioner testified that he only brought three and a half grams of cocaine, and not three and a half ounces of cocaine, to Ms. Pierson's house. Petitioner testified that this cocaine was for his personal use and not for sale. Police reports indicated that only three and a half grams of cocaine were recovered from the house. Testimony from the police indicated that the cocaine was not divided into packets and that petitioner was not in possession of a scale at the time of his arrest. Petitioner's right to present a defense was not violated by the trial court's refusal to order Ms. Pierson to answer whether she was a prostitute because petitioner was able to present his

theory that he only had a small amount of cocaine in his possession for his personal usage and was at the house to engage in an act of prostitution and not to sell drugs through his testimony and the testimony of several prosecution witnesses. *See United States v. Lucas*, 357 F.3d 599, 606–07 (6th Cir. 2004).

The judge's ruling was not so egregious that it effectively denied petitioner a fair trial, in light of the fact that petitioner was not completely barred from bringing in evidence to establish that he was at Ms. Pierson's house to engage in an act of prostitution and not to sell large quantities of cocaine. *See Fleming v. Metrish*, 556 F. 3d 520, 535-36 (6th Cir. 2009). With the quantum of evidence in the record, this Court concludes that the petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen v. Howes,* 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009)(citing *Crane*, 476 U.S. at 690 (citation and internal quotations omitted)).   Petitioner is not entitled to relief on his first claim.

**C.  Claim # 2. The ineffective assistance of trial counsel claim.**

Petitioner next claims that trial counsel was ineffective in regards to how he handled testimony from Lieutenant Davis concerning petitioner's drug usage and that petitioner was possibly carrying a gun.

Lt. Davis testified that Det. Cook advised him that petitioner had been investigated for drugs. (Tr. 12/11/06, p. 144). Defense counsel objected to this testimony and the trial court sustained the objection and instructed the jury to disregard the last statement. (*Id.*). Lt. Davis also testified that he was told McGowan "was possibly carrying a gun." (*Id.*, p. 145). There was no objection.

Petitioner argues that his trial counsel was ineffective for failing to move for a mistrial or for failing to request a stronger curative instruction regarding the testimony concerning his drug usage. Petitioner also claims that trial counsel was ineffective for failing to object or move for a mistrial after Lieutenant Davis testified that petitioner might be carrying a gun.

The Michigan Court of Appeals rejected petitioner's claim:

> Defendant's ineffective assistance claims of his trial counsel's failures with regard to the evidence of past drug investigations of defendant and the OMNI members' preparation for the possibility that defendant would carry a gun are without merit. Although trial counsel admitted at the *Ginther* [1] hearing that he was tired and focused on another case, defendant has not demonstrated a reasonable probability that the outcome would have been different but for his trial counsel's distractions. The comment regarding past drug investigations was stricken from the record after defense counsel objected. Moreover, in context, the testimony regarding preparing for the possibility that defendant may be carrying a gun was not improper. Rather, the testimony at this trial was seemingly admitted as part of police procedure and to explain why defendant was "tasered" when he reached into his pocket. In the presence of police, the informant made

---

[1] *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973)(footnote original).

26

a telephone call for three and one-half ounces of cocaine, and the drugs were presented at trial. Defendant telephoned when he was on his way to the informant's apartment with the drugs. When taken into custody at the apartment, drugs and a gun were found on defendant. For the reasons stated above, there was substantial evidence of defendant's guilt presented at trial.

*People v. McGowan*, 2008 WL 723945, at * 5.

Trial counsel objected to the references to petitioner's drug use.  The judge sustained the objection and advised the jurors to disregard the testimony. The judge later instructed the jurors in his final instructions that he had stricken certain testimony and they were not to consider this excluded evidence in reaching a decision. (Tr. 12/11/06, p. 314).

The Michigan Court of Appeals did not unreasonably reject petitioner's claim that trial counsel was ineffective for failing to move for a mistrial or request a stronger curative instruction in response to Lieutenant Davis' testimony concerning his drug use, as the state court reasonably concluded that the trial court's instruction to disregard that testimony was adequate to cure any error. *See Gonzales v. Quarterman*, 458 F.3d 384, 396-97 (5th Cir. 2006).

The Michigan Court of Appeals concluded that there was no basis to object to the references to petitioner being in possession of a gun because this testimony was proper under Michigan law.  Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when

assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  Because the Michigan Court of Appeals determined that Lieutenant Davis' testimony that he had been warned that petitioner might be in possession of a firearm was admissible under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003)*.*  In the present case, the Michigan Court of Appeals' determination that petitioner was not denied the effective assistance of trial counsel because of counsel's failure to object to the admission of this "bad acts" evidence was not contrary to, or an unreasonable application of, clearly established federal law, and thus did not warrant federal habeas relief, in light of the Michigan Court of Appeals' finding that this "bad acts" evidence was admissible under Michigan law. *See Pearl v. Cason,* 219 F. Supp. 2d 820, 828-29 (E.D. Mich. 2002).   Petitioner is not entitled to relief on his second claim.

## IV.  ORDER

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED WITH RESPECT TO THE *BRADY* VIOLATION.  UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY DAYS OF THE DATE

OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT

TO RELEASE HIM FROM CUSTODY FORTHWITH.

S/Arthur J. Tarnow
HONORABLE ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT JUDGE

Dated:    December 18, 2018